

**SO ORDERED.**

**SIGNED this 12 day of June, 2006.**

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

§UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                          CASE NO.

CHESTER A. DONALD and                           06-00100-5-ATS
MARY S. DONALD,

        DEBTORS

## ORDER APPROVING REAFFIRMATION AGREEMENT

A discharge hearing pursuant to 11 U.S.C. § 524(d) was held on April 26, 2006, for the court to consider whether to approve the reaffirmation agreement between the chapter 7 debtors, Chester Arthur Donald and Mary Scales Donald, and Coastal Federal Credit Union ("Coastal"). After the hearing, the court gave the debtors and Coastal additional time to file briefs. The briefs have been filed, and the issue is ready for determination.

The issue before the court is whether, under § 524(c)(6)(A), the reaffirmation agreement is in the "best interest" of the debtors. To make that determination the court must decide the broader issue of whether, under the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, §§ 304, 305, debtors may keep the property that secures their debts, without

reaffirming those debts.  Or, stated more colloquially, has the "ride-through" (sometimes called "pay and drive" or the "fourth option") method of dealing with a secured debt in a chapter 7 case survived the changes to the Bankruptcy Code made by BAPCPA? Specifically, in this case, the question is whether the chapter 7 debtors can retain their automobile by keeping current their installment payments, without reaffirming the debt.

If the court determines, as Coastal contends it must, that debtors no longer have the "ride-through" option, the court must then consider the ultimate effect of the court's decision to approve or disapprove the agreement. The debtors offer the ingenious argument that disapproval by the court of their reaffirmation agreement is in their best interest because by entering into a reaffirmation agreement the debtors have complied with all reaffirmation requirements, even if the agreement is disapproved by the court.  According to the debtors, because they entered into the reaffirmation agreement, they are not subject to the consequences of failing to reaffirm the debt.  For that reason, they argue that they may retain their automobile by making their payments even if the court disapproves the reaffirmation agreement, thereby making it unenforceable.

Before addressing the merits of whether the "ride-through" option has been terminated by BAPCPA, it would be helpful to explain the procedure that brings this issue before the court.  For a reaffirmation agreement to be enforceable, the agreement must satisfy the requirements of § 524(c).  In a case in which the

debtor is an individual "who is not represented by an attorney during the course of negotiating an agreement," the court must hold a discharge hearing pursuant to § 524(d).  If the debt to be reaffirmed is not based in whole or in part on a consumer debt secured by real property, the court must determine whether to approve the reaffirmation agreement under § 524(c)(6)(A) as "(I) not imposing an undue hardship on the debtor or a dependent of the debtor; and (ii) in the best interest of the debtor." 11 U.S.C. §§ 524(d) and 524(c)(6)(A).[1]

It has been the practice of this court for more than 20 years to schedule discharge hearings under § 524(d) any time a reaffirmation agreement is filed by a debtor who is not represented by counsel. The court also schedules discharge hearings where debtors who are represented by counsel in their cases have not been represented by their attorneys in connection with the negotiation of the reaffirmation agreements.

If a debtor is represented by an attorney during the course of negotiating the reaffirmation agreement, the attorney must, pursuant to § 524(c)(3), file a declaration or affidavit which states that

_____

[1]Discharge hearings pursuant to § 524(d) are optional, unless a debtor wants to enter into a reaffirmation agreement of the kind specified in § 524(c) and the debtor "was not represented by an attorney during the course of negotiating such agreement," in which case they become mandatory. 11 U.S.C. § 524(d).  At such a hearing the court must determine that the agreement complies with the requirements of § 524(c)(6), "if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor." § 524(d)(2).

    (A) such agreement represents a fully informed and
voluntary agreement by the debtor;
    (B) such agreement does not impose an undue hardship
on the debtor or a dependent of the debtor; and
    (C) the attorney fully advised the debtor of the
legal effect and consequences of-
        (I) an agreement of the kind specified in this
        subsection; and
        (ii) any default under such an agreement[.]

11 U.S.C. § 524(c)(3). If the debtor has been represented by an attorney during the course of negotiating the reaffirmation agreement and no affidavit or declaration is filed by the attorney, the agreement is not enforceable and no hearing is necessary. Section 524(c)(3) was not changed by BAPCPA.

So prior to BAPCPA, if a reaffirmation agreement was filed without an attorney's certification in a case in which the debtor was represented by an attorney, the court assumed that the debtor was not represented by the attorney in connection with the negotiation of the reaffirmation agreement and a discharge hearing was scheduled. BAPCPA, however, added § 524(k), which makes such assumptions unnecessary. Section 524(k)(3)(J) requires that the following statements be included in the reaffirmation agreement: ". . . 3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C. [Part C is the Certification by Debtor's Attorney]" and "4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E [Motion for Court Approval]." If the reaffirmation agreement does not contain the attorney's certification, the agreement is not enforceable unless

4

there is also a motion for court approval, in which case a hearing will be scheduled.

Whether or not the debtors were represented by their attorney "during" the negotiation of the reaffirmation agreement is relevant to whether or not the court has the authority to approve or disapprove the agreement. In this case the attorney's certification was not filed, and there was no motion for court approval. Furthermore, the debtors' brief includes a statement that the debtors were represented by counsel in connection with the "execution" of the reaffirmation agreement.

These facts might suggest that the court has no authority to approve or disapprove the reaffirmation agreement. Yet, no one raised this issue, and the two parties have presumed that the court has the authority to approve or disapprove the reaffirmation agreement. The parties specifically intended this to be a test of the new law, and the issue was presented to the court in a manner that puts neither party at risk. The debtors will keep their car whether the court decides that the "ride-through" option has been terminated and approves the reaffirmation agreement or whether the court rules that the "ride-through" option is still available and the reaffirmation agreement is disapproved. From Coastal's perspective the issue will be decided without exposing Coastal to the risk of violating the automatic stay.

The court finds that although the debtors have been ably represented by their attorney in connection with the issues presented to the court in connection with their reaffirmation agreement, the debtors were not represented by their attorney

5

during the course of the negotiation of the reaffirmation agreement with Coastal.

**Background Facts**

The facts in this case are not disputed.  Mr. and Mrs. Donald filed a joint petition for relief under chapter 7 of the Bankruptcy Code on January 27, 2006.  Coastal holds a secured claim secured by the debtors' automobile, a 1999 Lexus ES-V6.  The secured claim arises from a $12,335 advance made by Coastal to the debtors on July 28, 2004, in connection with the purchase of the 1999 Lexus.  According to the loan documents, the purpose of the loan was to "Purchase Vehicle Lease Buy Out."  Although the reaffirmation agreement states that the purchase price for the automobile was $12,335, it is not clear from the loan documents whether the advance was for the full purchase price of the automobile.  The balance outstanding at the time of the debtors' bankruptcy petition was $8,502.90, an amount that was clearly less than the purchase price.

The loan documents contain a standard bankruptcy default provision that says "[y]ou will be in default if you . . . file for bankruptcy, become insolvent . . . or if something happens we believe may substantially reduce your ability to repay what you owe."  Loan Documents at ¶ 14.  Coastal has stated that if the debtors "refused or were not permitted by the Court to reaffirm their obligations," it intends "to exercise its right contained in the Contract to declare a default thereunder based on the Debtors' filing for bankruptcy protection and move forward with repossessing and selling the Vehicle under the relevant provisions of the

6

Contract and applicable state law." Coastal Mem. of Law in Conn. with Reaff. Agmt. at 2-3.

The debtors were obligated to repay the loan to Coastal in monthly payments of $296.57, and when the debtors filed their petition on January 27, 2006, with the exception of the January 22 payment, the monthly payments were current. The reaffirmation agreement was signed by Coastal on March 8, 2006, and was subsequently signed by the debtors on a date not included in the agreement. The debtors' attorney, William E. Brewer, Jr., did not sign a declaration or affidavit of the kind referred to in § 524(c)(3), and the agreement was filed with the court on April 5, 2006.

The reaffirmation agreement provided that the installment payment due on January 22, 2006, and the payment due on February 22, 2006, would be added to the end of the loan and the loan term extended accordingly. The agreement also provided for the payment of attorney's fees to Coastal in the amount of $350. Notwithstanding Coastal's willingness to extend two monthly payments, the debtors made the January and February payments, and their obligation to the credit union is now current.

The debtors' Statement of Intention states that "Debtor will retain collateral [1999 Lexus] and continue to make regular payments." The Statement of Intention says nothing about reaffirming the debt. The debtors contend that they may keep their automobile without having to reaffirm the debt, but because the law is not clear on that point, they signed the reaffirmation agreement

to ensure that they could retain the vehicle if their interpretation of the law is incorrect.

The court scheduled a discharge hearing pursuant to § 524(d), and must now decide whether the reaffirmation agreement is in the debtors' best interest under § 524(c)(6)(A)(ii).

**Issue for Consideration by the Court**

Whether the reaffirmation agreement is in the best interest of the debtors under § 524(c)(6)(A)(ii) depends on whether a chapter 7 debtor may maintain personal property that is collateral for a secured claim without reaffirming the debt. The primary issue before the court is whether the "ride-through" method of dealing with a secured claim is still available after the Bankruptcy Code was amended by BAPCPA.

Unfortunately, the BAPCPA amendments do not provide a clear answer. The amendments are confusing, overlapping, and sometimes self-contradictory. They introduce new and undefined terms that resemble, but are different from, established terms that are well understood. Furthermore, the new provisions address some situations that are unlikely to arise. Deciphering this puzzle is like trying to solve a Rubik's Cube that arrived with a manufacturer's defect. Fortunately, after many twists and turns, a few patches of solid color emerge.

The court will begin its consideration of whether the "ride-through" continues after BAPCPA by examining the "ride-through" option under pre-BAPCPA law.

**Pre-BAPCPA "Ride-through"**

8

The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984) ("BAFJA"), added § 521(2) to the Bankruptcy Code.  Section 521(2) provided:

> (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate–
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
> (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

11 U.S.C. § 521(2) (1984).  This section was added at the behest of a coalition of creditor groups to require chapter 7 debtors to disclose their intentions with respect to personal property in their possession securing consumer debts.[2]

---

[2]The creditor coalition, which included banks, credit unions, finance and oil companies, and retailers, sought a means by which to determine, within a reasonable amount of time and without undue cost, what chapter 7 debtors intended to do with the personal property collateral in their possession.  See In re Belanger, 118 B.R. 368, 370 (Bankr. E.D.N.C. 1990) (discussing the events leading up to the enactment, in 1984, of § 521(2)), aff'd, 962 F.2d 345 (4th Cir. 1992).  The "Proposed Consumer Bankruptcy Improvements Act of 1981," a bill that preceded BAFJA, was the subject of hearings before the Senate Subcommittee on Courts of the Senate Committee on the Judiciary.  The gist of the testimony, as indicated in the available legislative history, was this:

Several witnesses appearing on behalf of the coalition

After passage of the BAFJA, courts differed on whether a debtor who wanted to retain property was limited to the options of redeeming or reaffirming. The issue came before this court in 1990 in Belanger, in which chapter 7 debtors sought to retain possession of their mobile home. 118 B.R. 368 (Bankr. E.D.N.C. 1990), aff'd, 962 F.2d 345 (4th Cir. 1992). The debtors filed the statement of intention then required by § 521(2)(A), in which they indicated that they would retain the collateral, but they did not indicate that they intended either to redeem the collateral or to reaffirm the debt. The debtors reasoned that these options did not apply to them because they intended instead to remain current on their payments and maintain the loan in its current status. The creditor protested, arguing that the debtor had only three alternatives:

---

and on behalf of the American Bankers Association explained how secured creditors in consumer chapter 7 cases often had no information concerning their collateral. The automatic stay prohibits contact with the debtor and typically the secured creditor would know nothing about the fate of its collateral. The complaint was that the secured creditor would often incur the expense of filing an adversary proceeding to lift the stay only to learn that the debtor all along intended to surrender the property without a contest. The solution to the problem was to require an early disclosure of the debtor's intention with respect to the property and early performance. If the creditor were to know what the debtor intended to do with the collateral, it would know how to proceed, such as by entering into a reaffirmation agreement, picking up the collateral, or seeking to modify the stay.

Belanger, 118 B.R. at 370-71 (footnotes with additional discussion of the legislative history of § 521(2)(A) omitted), aff'd, 962 F.2d 345 (4th Cir. 1992). The language of § 521(2)(A) is "essentially the same as that of section 1 of the proposed legislation," which was made law, as § 521(2)(A), with passage of BAFJA. Belanger, 118 B.R. at 371 n.3, aff'd, 962 F.2d 345.

reaffirm, redeem, or surrender the collateral. The court disagreed.

The language of the statute made clear that a debtor was required to state the debtor's intention with respect to surrender or retention of property and "if applicable" to specify whether the property was exempt, and whether the debtor intended to redeem the property or to reaffirm the debt. In <u>Belanger</u>, those options did not apply because the debtors chose to retain the property and remain current on their debt. That option, though not identified in the statute, was not precluded by it.

The sparse legislative history of § 521(2)(A) (<u>see</u> footnote 2, <u>supra</u>) says that the statute was "essentially a *notice* requirement to permit secured creditors to ascertain the debtor's intentions early in the case." <u>Belanger</u>, 118 B.R. at 370 (citing H. Sommer, <u>The 1984 Changes in Consumer Bankruptcy Law</u>, 31 Practical Lawyer 45, 55 (Jan. 1985)), <u>aff'd</u>, 962 F.2d 345. On appeal, the district court agreed that "[t]he idea behind the section was not to limit the debtor to the options mentioned in Section 521(2)(A), nor to alter his substantive rights with regard to the property." <u>In re Belanger</u>, 128 B.R. 142, 145 (E.D.N.C. 1990), <u>aff'd</u>, 962 F.2d 345 (4th Cir. 1992).

After further appeal, the Court of Appeals for the Fourth Circuit concluded that "'[n]othing in section 521(2) requires the debtor to choose redemption, reaffirmation or surrender of the property to the exclusion of all other alternatives although no other alternatives are provided for in the Code. That section merely requires a statement of whether the debtor intends to choose

11

any of those options, *if applicable*.'" <u>Belanger</u>, 962 F.2d at 347-48, (quoting 3 <u>Collier on Bankruptcy</u> § 521.09A, at 521-46 (Lawrence P. King ed., 15th  ed. 1991)) (emphasis in original, footnote omitted).

The court construed "if applicable" to mean that "[t]he options stated in the statute are not exclusive." <u>Belanger</u>, 962 F.2d at 347. A majority of other courts to consider the issue have reached the same conclusion, ruling that if a debtor remains current with payments due on a secured debt, the creditor cannot foreclose or repossess the collateral. <u>See</u>, <u>e.g.</u>, <u>In re Price v. Delaware State Police Fed. Credit Union</u>, 370 F.3d 362 (3d Cir. 2004); <u>In re Parker</u>, 139 F.3d 668 (9th Cir.), <u>cert. denied sub nom</u>, <u>McClellan Fed. Credit Union v. Parker</u>, 525 U.S. 1041, 119 S. Ct. 592 (1998); <u>In re Boodrow</u>, 126 F.3d 43 (2d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1117, 118 S. Ct. 1055 (1998); <u>Lowry Fed. Credit Union v. West</u>, 882 F.2d 1543 (10th Cir. 1989). These courts, like the <u>Belanger</u> courts, emphasize that construing the statute to limit debtors' options to only those listed "would severely impede the debtor's fresh start." <u>Belanger</u>, 118 B.R. at 370, <u>aff'd</u>, 962 F.2d 345; <u>see also</u>, <u>e.g.</u>, <u>Boodrow</u>, 126 F.3d at 51 (observing that the "policy embodied in the Code that a debtor discharged from bankruptcy should receive a 'fresh start' has been emphasized time and again by the Supreme Court and [the Second Circuit]"). Providing a fresh start for honest debtors is one of the "primary purposes" of the bankruptcy law, so a limiting interpretation at odds with that purpose "should not be adopted unless it is clearly

12

required by the statute." Belanger, 118 B.R. at 370, aff'd, 962 F.2d 345.

The courts that disagree hold generally that the statute offers three options only, to the exclusion of others. See In re Burr, 160 F.3d 843 (1st Cir. 1998); In re Taylor, 3 F.3d 1512 (11th Cir. 1993); Matter of Edwards, 901 F.2d 1383 (7th Cir. 1990); see also In re Bell, 700 F.2d 1053 (6th Cir. 1983). The Belanger court discussed both Edwards and the case on which it relied, In re Bell, which held that "a clause in the loan papers making a debtor in default upon filing for bankruptcy becomes effective when the trustee abandons the collateral." Belanger, 962 F.2d at 347 (construing Bell, 700 F.2d at 1056). At that point, the Sixth Circuit explained, the debtor was required either to repay the entire indebtedness or to reaffirm; otherwise the creditor could repossess the collateral.

The Belanger court considered these arguments but disagreed. It pointed out that this reasoning fundamentally conflicts with Fourth Circuit precedent, established in Riggs Nat'l Bank v. Perry, to the effect that "a default-on-filing clause in an installment loan contract was unenforceable as a matter of law." Belanger, 962 F.2d at 348 (construing Riggs Nat'l Bank v. Perry, 729 F.2d 982, 984-85 (4th Cir. 1984)).

Pre-BAPCPA subsection 521(2)(B) provided that "within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by

subparagraph (A) of this paragraph . . . ."  Pre-BAPCPA, this deadline was enforced by the trustee pursuant to 11 U.S.C. § 704(3), which provided that the trustee shall "ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title."  11 U.S.C. § 704(3) (1984).  This deadline, like the rest of § 521(2), was considered procedural as opposed to substantive, so a debtor's failure to meet the deadline did not "reduce the debtor's substantive rights."  The "only consequence of the failure to perform" was, "in some cases, relief from the automatic stay with respect to the property."  4 <u>Collier on Bankruptcy</u> ¶ 521.10[3], at 521-51 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) (citing cases).

Finally, § 521(2)(C) stated that the provisions of subsections (A) and (B) did not "alter the debtor's or the trustee's rights with regard to such property under this title."  11 U.S.C. § 521(2)(C) (1984).  The <u>Belanger</u> court acknowledged <u>Collier</u>'s criticism of the <u>Edwards</u> opinion in particular for "failing to give effect to § 521(2)(C) and legislative history that disclosed Congress rejected a proposal to lift the automatic stay if the debtor did not timely redeem or reaffirm." <u>Belanger</u>, 962 F.2d at 347 (citing 3 <u>Collier on Bankruptcy</u> § 521.09A, at 521-49 (Lawrence P. King ed., 15th ed. 1991) (construing H.R. 4786, 97 Cong., 1st Sess. § 7 (1981))).

In sum, § 521(2)(A) was enacted in 1984 to provide <u>notice</u> to creditors of what a chapter 7 debtor with a secured consumer debt intended to do with the collateral.  It did not affect the debtor's substantive rights. <u>Belanger</u>, 962 F.2d at 347 (citing 3 <u>Collier on</u>

14

Bankruptcy § 521.09A, at 521-49 (Lawrence P. King ed., 15th ed. 1991)). It was, instead, "a procedural provision requiring notice in order to inform the lien creditor promptly of the debtor's intention." Belanger, 962 F.2d at 347. Belanger also reiterated that bankruptcy default, or "ipso facto," clauses are not enforceable in the Fourth Circuit. Belanger, 962 F.2d at 348 (citing Riggs Nat'l Bank of Washington, D.C. v. Perry, 729 F.2d 982 (4th Cir. 1984)).

**BAPCPA Amendments**

Numerous 2005 amendments to the Bankruptcy Code have a potential impact on the "ride-through" option. There are several changes to § 521, specifically §§ 521(a)(2)(A), (B) and (C), § 521(a)(6) and § 521(d). The addition of § 362(h) and changes to §§ 524(c), (k), (l) and (m) are relevant as well.

Post-BAPCPA § 521(a)(2)(A)

Section 521(2) was amended by BAPCPA to read as follows:

(a) The debtor shall--
          . . . .

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate–
     (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
     (B)  within 30 days after the first date set for the meeting of creditors under section 341(a) or within such additional time as the court, for

15

> cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h); . . .

11 U.S.C. § 521(a)(2) (2005).

With the passage of BAPCPA, § 521(2)(A) was redesignated § 521(a)(2)(A), and the reference to "consumer" debts was deleted. The legislative history to that amendment states only that the section was amended by section 305 of BAPCPA "to make the requirement to file a statement of intention applicable to all secured debts, not just secured consumer debts." E-2 Collier on Bankruptcy at App. Pt. 10-336 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006). Section 521(2)(A) otherwise remains unchanged, and the amendment by itself does not affect the "ride-through" option. 4 Collier on Bankruptcy ¶ 521.10[2], at 521-49 to -50 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006).

Post-BAPCPA § 521(a)(2)(B)

Section 521(2)(B) was redesignated § 521(a)(2)(B), and the time for the debtor to perform the debtor's intention was changed from 45 days after filing of the notice of intent to 30 days after the first date set for the meeting of creditors. Section 521(a)(2)(B) requires the debtor to perform the intention as specified in subsection (A) within 30 days after the first date set for the meeting of creditors, unless the court for cause and within

16

that 30-day period, allows additional time. The change to
§ 521(2)(B) does not affect the "ride-through" option.

Post-BAPCPA § 521(a)(2)(C)

Section 521(2)(C) was redesignated § 521(a)(2)(C) and the
section was amended to provide that "nothing in subparagraphs (A)
and (B) of this paragraph shall alter the debtor's or the trustee's
rights with regard to such property under this title, *except as
provided in section 362(h)*."  The addition of the exception
provided in § 362(h) is significant, but § 362(h) does not on its
own eliminate the "ride-through" option.

Post-BAPCPA § 362(h)

Section 362(h) was added by BAPCPA and provides that:

(h)(1) In a case in which the debtor is an individual,
the stay provided by subsection (a) is terminated with
respect to personal property of the estate or of the
debtor securing in whole or in part a claim, or subject
to an unexpired lease, and such personal property shall
no longer be property of the estate if the debtor fails
within the applicable time set by section 521(a)(2) --

(A) to file timely *any statement of intention
required* under section 521(a)(2) with respect to
such personal property or to indicate in such
statement that the debtor will either surrender
such personal property or retain it and, if
retaining such personal property, either redeem
such personal property pursuant to section 722,
enter into an agreement of the kind specified in
section 524(c) applicable to the debt secured by
such personal property, or assume such unexpired
lease pursuant to section 365(p) if the trustee
does not do so, as applicable; and

(B) to take timely the action specified in such
statement, as it may be amended before expiration
of the period for taking action, unless such
statement specifies the debtor's intention to
reaffirm such debt on the original contract terms
and the creditor refuses to agree to the
reaffirmation on such terms.

17

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee.  If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

11 U.S.C. § 362(h) (2005) (emphasis added).

According to Collier on Bankruptcy, the "apparent purpose" of § 362(h) is to "encourage debtor compliance with section 521," and the statutes should be construed together in order to give effect to both.  3 Collier on Bankruptcy ¶ 362.10A, at 362-120 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006). It may be argued that since the "ride-through" option was not specifically eliminated by changes to § 521(2)(A), a debtor should be able to state an intention to retain property without redemption or reaffirmation and without having the stay terminated by § 362(h). The problem with that argument, however, is that it would be contrary to the plain meaning of § 362(h), which provides that the automatic stay shall terminate if the debtor is retaining property unless the debtor states the intention to either redeem the property or to reaffirm the debt.[3]

---

[3]Collier suggests that the options listed in § 362(h)(1)(A) are joined with the word "or," and that since under the applicable rules of construction, "or" is not exclusive, the listed options are not exclusive.  11 U.S.C. § 102(5); 3 Collier on Bankruptcy ¶ 362.10A, at 362-119 to -120 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) (referring to 11 U.S.C. § 102(5)).  The problem with that analysis is that although the word "or" is construed to be, pursuant to § 102(5), non-exclusive, § 362(h) uses the construction "either . . . or" which would be construed to set forth choices that are exclusive.

The consequences of not complying with § 362(h)(1)(A) are that the stay will terminate with respect to personal property of the estate or the debtor and that the personal property shall no longer be property of the estate. Section 362(h) therefore expands the consequences of a debtor's failure to comply with § 521(a)(2)(A) and § 521(a)(2)(B). As noted earlier, prior to passage of BAPCPA, the trustee, pursuant to § 704(3), was to "ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title." Section 704(3) is now designated 704(a)(3), but otherwise that subsection is unchanged.[4] No enumerated powers are given to the trustee to "ensure" performance, but with the addition of § 362(h) the stay will be terminated if the debtor does not perform.

Termination of the stay, however, does not mean that the "ride-through" option is eliminated. The Fourth Circuit Court of Appeals has held that "a default-on-filing clause in an installment loan contract was unenforceable as a matter of law." Belanger, 962 F.2d at 348 (construing Riggs Nat'l Bank v. Perry, 729 F.2d 982, 984-85 (4th Cir. 1984)), and nothing in § 362(h) changes that.

Post-BAPCPA § 521(a)(6)

Unlike the BAPCPA amendments to § 521(a)(2) and § 362(h), which do not by themselves eliminate the "ride-through" option, the

_____

[4]Section 704(3) still refers to § 521(2)(B), even though that section no longer exists, having been redesignated by BAPCPA as § 521(a)(2)(B). Commentary in Collier on Bankruptcy raises the question of whether courts will interpret § 704(a)(3) to have no applicability, or will construe the reference to § 521(2)(B) to refer to new § 521(a)(2)(B). 4 Collier on Bankruptcy ¶ 521.10[4], at 521-52 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006).

amendment to § 521(a)(6) made by BAPCPA does.  In most chapter 7 cases, § 521(a)(6) will have very little application.  Section 521(a)(6) provides that a debtor shall–

> (6)  in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either--
>> (A)  enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
>> (B)  redeems such property from the security interest pursuant to section 722.
> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law, unless the court determines on the motion of the trustee filed before the expiration of such 45-day period, and after notice and a hearing, that such property is of consequential value or benefit to the estate, orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee . . . .

11 U.S.C. § 521(a)(6) (2005).

In essence, § 521(a)(6) requires an individual debtor in a chapter 7 case who is retaining personal property either to redeem the property or to reaffirm the debt within 45 days "after the first meeting of creditors"[5] with respect to property as to which

---

[5]The requirement that the debtor either enter into an agreement with the creditor pursuant to § 524(c) or redeem the property within 45 days after the first meeting of creditors is different than the requirement in § 521(a)(2) and § 362(h) that the debtor both file the statement of intention and perform the intention within 30 days of filing the petition and of the first date set for the meeting of creditors, respectively.  Although different, the deadlines are not necessarily inconsistent.  Section 521(a)(6) has

a creditor "has an allowed claim for the purchase price."  If the debtor fails to timely redeem the property or reaffirm the debt, the debtor shall "not retain possession"[6] of the personal property, the automatic stay is terminated with respect to property of the estate or of the debtor, the property shall no longer be property of the estate, and the creditor may take whatever action is permitted by applicable nonbankruptcy law.

For the redemption/reaffirmation requirement of § 521(a)(6) to come into play, the creditor must have "an allowed claim for the purchase price."  There are a number of reasons why this provision will rarely be applicable in chapter 7 cases.

First, the creditor must have "an allowed claim." "Generally, in order for a claim to be allowed, it must be filed in accordance with section 501."  4 Collier on Bankruptcy ¶ 521.10[4], at 521-55 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006).  In a recent case the bankruptcy court for the District of Kansas observed that the construction of "allowed claim" in § 521(a)(6) is problematic, so much so that the word "allowed" should be disregarded to give effect to Congressional intent.  In re Rowe, -- B.R. --, 2006 WL 1446181 at * 6-7 (Bankr. D. Kan. 2006).  This

---

a much more limited application than § 521(a)(2), and if § 521(a)(6) is applicable and if there is a conflict between the two time limits, the 45-day time limit of § 521(a)(6) should control.

[6]The debtor may "not retain possession" of personal property that comes within the statute.  The "not retain" concept is new to the Bankruptcy Code, and is neither explained nor implemented by the statute.  The statute does not specify to whom possession of the property should be given, although the secured creditor or the trustee are the most likely candidates.  There also is no enforcement provision in the statute to take effect if the debtor retains possession without redeeming or reaffirming the debt.

court respectfully disagrees that the word "allowed" should be ignored.  The term "allowed claim," although not defined in the Bankruptcy Code, is generally recognized, frequently used, and well understood.  <u>See Jacksonville Airport, Inc. v. Michkeldel, Inc.</u>, 434 F.3d 729, 731 (4th Cir. 2006) (a creditor in a chapter 11 case may not vote on the debtor's plan of reorganization unless it has an "allowed" claim).  Typically, for a claim to be an allowed claim, a proof of claim must be filed.[7]  In no-asset chapter 7 cases, creditors do not file proofs of claim and do not have "allowed" claims.  Creditors with secured claims, prior to the addition of § 524(a)(6), have had no reason to file proofs of claim.  Filing a proof of claim is a reasonable prerequisite to receiving the relief afforded by § 521(a)(6).  If a debtor who is current in the debtor's payments to the creditor is not permitted to retain the debtor's personal property--for example, an automobile or mobile home--because of an ipso facto clause, it is not too much to require that the secured creditor file a proof of claim.  At a minimum, the proof of claim would establish the amount of the claim and would provide the documentation that supports the creditor's invocation of an ipso facto clause.  Without a proof of claim, a debtor who is current with payments to the creditor stands to lose valuable and necessary property without anything being

---

[7]As the court in <u>Rowe</u> observed, a claim can be allowed in one of three ways: "first, a proof of claim is filed or deemed filed and no party objects; second, a claim is allowed by the court after an objection is filed; and third, a claim is estimated by the Court under the provisions of section 502(c)."  <u>Rowe</u>, -- B.R. --, 2006 WL 1336181 at *6 (citing 4 <u>Collier on Bankruptcy</u> ¶ 502.01  (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)).

filed with the bankruptcy court.  In the case under consideration here, no claim was filed by the credit union.

Nevertheless, even if a creditor does file a proof of claim and the claim is deemed allowed, the claim must be "for the purchase price" of the personal property at issue.  The term "purchase price" is defined in Black's Law Dictionary (6th ed. rev. 1990) as being the "[p]rice agreed upon as a consideration for which property is sold and purchased."[8]  A plain meaning construction of the term "claim for the purchase price" indicates a claim for the full purchase price.  A claim for the full purchase price is not the same as a claim for a "purchase-money obligation" or a claim secured by a "purchase-money security interest."  It is also not the same as a claim for "any portion of the purchase price" or a claim "attributable in whole or in part to the purchase price."  Had Congress meant any of these other types of claims, it would have identified them as it has in other sections of the Bankruptcy Code.

"Purchase-money obligation" and "purchase-money security interest" are terms that are familiar to consumer commerce and are

---

[8]  This definition does not appear in the most recent editions of Black's Law Dictionary.  However, Black's underwent a major overhaul beginning with its seventh edition, published in 1999, and completed with the eighth edition, published in 2004.  Among the goals of the overhaul were to "avoid[] duplicative definitions." "Preface to the Seventh Edition," Black's Law Dictionary at xii (8th ed. rev. 2004).  Though the eighth edition omits the definition of "purchase price," the definition of "price" is "[t]he amount of money or other consideration asked for or given in exchange for something else; the cost at which something is bought or sold."  Because the definition of "price" is so similar to the definition of "purchase price" in prior editions, it is likely that "purchase price" was omitted in the newer revisions simply because the editors deemed it duplicative.

used in the Uniform Commercial Code and in the Truth in Lending Act.  "Purchase money obligation" and "purchase money security interest" mean an obligation or security interest involving <u>all or a part</u> of the purchase price.  <u>See</u> Uniform Commercial Code § 9-103 defining "purchase-money obligation," "purchase-money collateral" and "purchase-money security interest".

The term "nonpurchase money security interest" is used in § 522(f)(1)(B), and the term "purchase money security interest" is used in § 524(k)(3)(G) and § 1325(a) (the "hanging paragraph"), two sections added by BAPCPA.  Section 1326(a)(4), added by BAPCPA, refers to a secured claim "attributable in whole or in part to the purchase price of such property."  Clearly, if Congress intended in § 521(a)(6) for a "claim for the purchase price" to mean something less than the full purchase price, it would have said so as it did in § 522(f)(1)(B), § 524(k)(3)(G), § 1325(a)(4) and § 1326(a)(4).  In § 521(a)(6) itself, there is a reference to the claim being secured "in whole or in part by an interest in such personal property."  If Congress had meant that the claim could be for less than the full purchase price, it could have used the same "in whole or in part" language to the describe the debt that it used to describe the collateral.

"The Court of Appeals for the Fourth Circuit recently observed that the use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to.'"  <u>In re Paschal</u>, 337 B.R. 274, 279 (Bankr. E.D.N.C. 2006) (quoting <u>In re Coleman</u>, 426 F.3d 719, 725 (4th Cir. 2005)).  The <u>Coleman</u> court, and this court

in <u>Paschal</u>, "also quoted the Supreme Court's clear directive on this topic: 'Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" <u>Paschal</u>, 337 B.R. at 279 (quoting <u>Coleman</u>, 426 F.3d at 725-6 (quoting <u>Keene Corp. v. United States</u>, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993) (internal quotation marks and alterations omitted))).[9]

Creditors will rarely have an allowed claim for the full purchase price of personal property, either because consumer purchases typically involve a down payment or because where the full purchase price was financed, installment payments will have been made prior to bankruptcy.  In the case before this court, Coastal may or may not have financed the full purchase price of the debtors' automobile, but because the debtors have paid down the original debt, the credit union does not hold a claim for the

---

[9]The legislative history of § 521(a) explains that it was amended to provide that the chapter 7 debtor may not retain possession of personal property "securing, *in whole or in part*, a *purchase money security interest* unless the debtor, within 45 days after the first meeting of creditors, enters into a reaffirmation agreement with the creditor or redeems the property." E-2 <u>Collier on Bankruptcy</u> App. Pt. 10(b) at App. Pt. 10-335 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) (emphasis added). Obviously, that is not what the statute says, and the plain and specific language of the statute must control.  The need to distinguish between the legislative history and the actual language of the statute is bolstered by another inconsistency within the same section:  The legislative history states that the automatic stay is terminated with respect to the personal property of the individual debtor "in a chapter 7, 11, or 13 case" if the debtor fails to file the statement of intention required by § 521(a)(2) or to indicate, in the statement, the treatment of the property.  E-2 <u>Collier on Bankruptcy</u> at App. Pt. 10-335.  Section 521(a)(2)(A) clearly requires only individual chapter 7 debtors to file a statement of intention, and is contrary to the legislative history.

"purchase price."   Furthermore, no proof of claim was filed and Coastal does not have an "allowed claim" in any amount. Consequently, the redemption/reaffirmation requirement of § 521(a)(6) is not applicable in this case.

Post-BAPCPA § 521(d)

Prior to the enactment of BAPCPA, the Fourth Circuit in Belanger, relying on precedent established in Riggs Nat'l Bank v. Perry, held that "a default-on-filing clause in an installment loan contract was unenforceable as a matter of law." Belanger, 962 F.2d at 348 (construing Riggs Nat'l Bank v. Perry, 729 F.2d 982, 984-85 (4th Cir. 1984)).  Section 521(d), added by BAPCPA, significantly changes that ruling.

Section 521(d) provides:

> If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property which a lessor or bailor owns and has leased, rented, or bailed to the debtor or as to which a creditor holds a security interest not otherwise voidable under section 522(f), 544, 545, 547, 548, or 549, nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor.  Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

11 U.S.C. § 521(d) (2005).  Section 521(d) thus alters the Bankruptcy Code's limitation regarding a bankruptcy default clause if a debtor fails to take the action specified in § 521(a)(6) or in § 362(h).

Section 521(a)(6), as discussed above, does adversely affect the "ride-through" option, but that section has extremely limited

applicability and will rarely trigger the limitations of § 521(d). Section 362(h), however, will have more applicability. As previously discussed, the subsections of § 521(a)(2) referred to in § 362(h) do not require a debtor to redeem property or reaffirm a debt, and failure to redeem property or reaffirm a debt under § 521(a)(2) will not implicate the limitations of § 521(d). Section 362(h), however, does require redemption or reaffirmation. The failure of a debtor to redeem the property or reaffirm the debt triggers the provisions of § 521(d).

If the restrictions in § 521(d) regarding the Bankruptcy Code's limits on ipso facto clauses become operative, it is not clear from the language of § 521(d) what types of ipso facto clauses will be affected. The ipso facto provisions referred to in § 521(d) are those that have the "effect of placing the debtor in default . . . by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor." In basic bankruptcy terminology, a bankruptcy proceeding is not the same as a bankruptcy case. A proceeding is something that occurs within an already existing bankruptcy case. Most bankruptcy default clauses, such as the one in this case, refer to the commencement or filing of a bankruptcy case, and it would be unusual for a loan document to provide a default based on "the existence of a proceeding" within a bankruptcy case. Many default clauses do use the term "bankruptcy proceeding," but presumably creditors intend the term "bankruptcy proceeding" to mean a bankruptcy case. Why Congress did not refer to ipso facto clauses in § 521(d) in the same manner as it did in §§ 365(e)(1) and

27

541(c)(1) is a mystery.  Nevertheless, the language of § 521(d) is broad enough to encompass the filing of a bankruptcy case and would apply to the ipso facto clause in Coastal's loan documents.

The significance of § 521(d)'s treatment of ipso facto clauses is simply that when a debtor fails to timely take the actions required by §§ 521(a)(6), or 362(h)(1) or (2), the new statutory language eliminates limitations previously imposed by the Bankruptcy Code on the operation of ipso facto clauses.  Section 521(d) does not create a new statutory remedy to be used by creditors, and does not write ipso facto clauses into contracts where none exist.  Rather, it enables creditors to proceed under contractual default clauses without limitations imposed by the Bankruptcy Code.  See In re Rowe, -- B.R. –, 2006 WL 1446181 at *8 (Bankr. D. Kan. 2006) (emphasizing that § 521(d) "does not make such 'ipso facto' clauses sufficient to define a default in accord with nonbankruptcy law").  Creditors still must ensure that the contract, and their efforts to enforce the terms in it, do not run afoul of any applicable state laws.  See Rowe, -- B.R. at --, 2006 WL 1446181 at *9 (observing that "the conditions to declare a default and obtain possession of the collateral will not be present under Kansas law when the debtor remains current on the obligation and there is no other basis for finding significant impairment," as required by the Kansas Uniform Consumer Credit Code).

Post-BAPCPA § 524(k)

BAPCPA made a number of changes to § 524, including enhancing the disclosures that must be contained in reaffirmation agreements. One of the required disclosures contained in § 524(k) seems to

expressly recognize the continued vitality of the "ride-through" option. In particular, the disclosure required in § 524(k)(3)(J)(i)(7.) advises the debtor that "[e]ven if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor *may* still have the right to take the security property *if you do not pay the debt or default on it.*" (emphasis added). The implication is that even if the debtor discharges the debt, the property may be retained by the debtor so long as the debtor continues to make the agreed-upon payments. Presumably, the disclosures are intended to advise debtors of the correct state of the law, but here the disclosure appears to be incorrect, or at the very least, misleading.

## Elimination of the "Ride-Through" Option

The court approached its analysis of the "ride-through" option under BAPCPA in same manner it considered the "ride-through" option in Belanger. In re Belanger, 118 B.R. 368, (Bankr. E.D.N.C. 1990), aff'd, 962 F.2d 345 (4th Cir. 1992). The court is aware, as it was in Belanger, that providing a fresh start for honest debtors is one of the "primary purposes" of the bankruptcy law, and that a limiting interpretation contrary to that purpose "should not be adopted unless it is clearly required by the statute." Belanger, 118 B.R. at 370, aff'd, 962 F.2d 345.

There are good arguments that the "ride-through" option still is available to chapter 7 debtors, but the two courts that have considered the issue have concluded that the "ride-through" option was terminated by amendments to the Bankruptcy Code made by BAPCPA. In re Craker, 337 B.R. 549 (Bankr. M.D.N.C. 2006); In re Rowe, --

29

B.R. –, 2006 WL 1446181 (Bankr. D. Kan. 2006).  These are well reasoned decisions, and the court agrees with the conclusion they reach.  Congress chose not to change § 521(2)(A) and (B) (now § 521(a)(2)(A) and (B)), the principal sections that supported the "ride-through" option, but the elimination of the "ride-through" was accomplished by changes to § 521(2)(C)(now § 521(a)(2)(C)) and the addition of § 362(h), § 521(a)(6) and § 521(d).  The court is convinced that termination of the "ride-through" option is what Congress intended.[10]

The court must now address the debtors' alternative argument.

**May a Debtor Comply with §§ 521(a)(2), 362(h), 521(c)(6) and 521(d) by Entering into a Reaffirmation Agreement that Is Unenforceable?**

The debtors contend that a chapter 7 debtor may avoid all of the consequences arising from §§ 362(h), 521(a)(6), and 521(d) by executing a reaffirmation agreement, even in circumstances where the reaffirmation agreement is, or will become, unenforceable. Whether the reaffirmation agreement is ultimately disapproved or deemed enforceable, the debtors argue, are issues that are separate

---

[10]In the introductory comments to the House Report, it states generally that protections for secured creditors are provided in the bill's termination of the automatic stay "with respect to personal property if the debtor does not timely reaffirm the underlying obligation or redeem the property." E-2 Collier on Bankruptcy App. Pt. 10-268 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) (quoting Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 257, H.R. Rep. No. 109-31, Pt. 1, 109 th Cong., 1st Sess. (2005)). See also, Richardo I. Kilpatrick, Selected Creditor Issues Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 817, 825, 827 (2005) (stating that "the fourth option or 'ride through' has been abolished through the amendments to § 521," and that section 521(d) was "amended to overrule the decisions of the courts allowing debtors to 'pay and drive'").

and distinct from the act of entering into the agreement. According to the debtors, the consequences arising from §§ 362(h), 521(a)(6), and 521(d) are triggered upon the debtor's failure to enter into the agreement, not by the court's disapproval of the agreement or a determination that the agreement is unenforceable. Coastal, however, maintains that to avoid the consequences arising from §§ 362(h), 521(a)(6), and 521(d) a debtor must enter into a reaffirmation agreement and that the agreement must be enforceable.

The debtors' argument is creative and appealing, and indeed it may prevail in some circumstances. But to adopt the debtors' position in this case would be tantamount to abrogating the requirements of § 362(h) and § 521(d). For the debtors to be able to retain their 1999 Lexus ES-V6, they must either redeem the vehicle or reaffirm their obligation to Coastal. Rather than facing the consequences of a termination of the stay under § 362(h) and the elimination under § 521(d) of the limitations on the enforcement of Coastal's ipso facto clause, the debtors chose to reaffirm the indebtedness. The court agrees that reaffirmation was a wise decision and finds that the reaffirmation agreement is in the best interest of the debtors and will not cause them any undue hardship. Accordingly, the reaffirmation will be approved.

This does not mean that the debtors' argument will always fail. Section 524(c) sets forth the requirements that must be met for a reaffirmation agreement to be enforceable. Several of those requirements do not involve the debtor, and whether or not an agreement is enforceable may often be beyond the debtor's control. For example, an agreement prepared by a creditor may be

unenforceable because the agreement does not contain the disclosures required by § 524(c) and (k). <u>See, e.g.</u>, <u>In re Quintero</u>, 2006 WL 1351623 at *3 (finding agreement unenforceable due to creditor's failure to timely comply with § 524(k) and, on that basis, prohibiting creditor from repossessing car). (Bankr. N.D. Ca. 2006). Furthermore, an agreement may be unenforceable under § 524(c)(3) because it is not filed with the court.

In some circumstances a reaffirmation agreement entered into by the debtor in good faith may satisfy the requirements of § 362(h), § 521(a)(6) and § 521(d) where the court disapproves the reaffirmation agreement under § 524(c)(6), especially where the debtor intends to perform under the reaffirmation agreement and where disapproval by the court is beyond the debtor's control.[11]

It also is worth acknowledging that, ultimately, whether or not the "ride-through" option survives the new statutory hurdles may not make much of a difference to many debtors and creditors because in this circuit, and also in those that do not recognize the "fourth option," debtors continue to submit payments when due and creditors continue to accept them. Creditors frequently acquiesce in ride-through because chapter 7 debtors "usually

---

[11]The same result could obtain where a debtor's good faith reaffirmation agreement is unenforceable because the attorney who represented the debtor during the negotiation of the agreement declined to sign the affidavit or declaration required by § 524(c)(3). An attorney who represents a debtor during the negotiation of a reaffirmation agreement has an obligation to determine that the agreement "does not impose an undue hardship on the debtor or a dependent of the debtor." 11 U.S.C. § 524(c)(3)(B). Such an obligation may place attorneys in the awkward position of having to make a determination that is contrary to the wishes of their clients.

become[] better able to afford paying secured debts, and this gain in creditworthiness may more than offset the creditor's loss of recourse against the debtor personally after discharge." Jean Braucher, <u>Rash and Ride-Through Redux: The Terms for Holding On to Cars, Homes and Other Collateral Under the 2005 Act</u>, 13 Am. Bankr. Inst. L. Rev. 457, 476 (Winter 2005). Creditors usually prefer payment to repossession, and in most cases where the debtors are current with their installment obligations, the secured creditor will be paid in full, the debtor will keep the property, and, fortunately, whether or not the "ride-through" option is available will not matter.

For the reasons stated, the reaffirmation agreement between the chapter 7 debtors and Coastal Federal Credit Union is **APPROVED**.

**SO ORDERED.**

**END OF DOCUMENT**